IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

|  |  |
|---|---|
| EDWARD T. MOORE, | |
| Plaintiff, | CV-10-36-GF-SEH-RKS |
| vs. | |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | **FINDINGS & RECOMMENDATIONS** |
| Defendant. | |

**I.    SYNOPSIS**

Edward T. Moore instituted this action to obtain judicial review of the

decision of Defendant, Commissioner of Social Security ("Commissioner"),

denying his application for Disability Insurance Benefits (DIB) under Title II of

the Social Security Act, 42 U.S.C. §§ 401-434.

Jurisdiction vests pursuant to 42 U.S.C. § 405(g).  The case was referred to the undersigned for the submission of proposed findings and recommendations by United States District Judge Sam E. Haddon on August 25, 2010.  Now pending are Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment. (C.D. 17 & 24.)  It will be recommended that Plaintiff's motion for summary judgment be granted, and this matter be remanded to the ALJ. It appears the ALJ erred in considering Mr. Moore's impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.02 instead of Listing 11.02 or 11.03. Also, the ALJ erred by making his disability determination without requesting Mr. Moore receive neuropsychological testing that would establish whether Mr. Moore has the memory and cognitive impairments required for a finding of disability. Upon remand, it will be recommended the ALJ first consider whether Mr. Moore meets the disability requirements under Listing 11.02 or 11.03 Epilepsy.  If Mr. Moore is not disabled under those Listings, it is recommended the ALJ request that Mr. Moore obtain neuropsychological testing, and use the results from this testing in determining whether he is disabled under Listing 12.02.

## II.    PROCEDURAL BACKGROUND

Mr. Moore protectively filed his claim for DIB under §§ 216 and 223 of

Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423 on March 30, 2006, alleging a disability onset date of September 17, 2005.  Tr. 10.  On August 15, 2006, his claims were denied, <u>Id</u>. and again upon reconsideration on January 26, 2007.  <u>Id</u>.  Mr. Moore filed a request for hearing on February 26, 2007.  <u>Id.</u>  A hearing de novo was held on March 19, 2008. Tr. 7-20.

The ALJ issued a decision on May 15, 2008, that Mr. Moore was not disabled within the meaning of the Act. Tr. 7-20.  The Appeals Council denied Plaintiff's request for review of the decision on April 6, 2010. Tr. 1-4.  Plaintiff appeals this decision.

## II.    STANDARD OF REVIEW

The Court has discretion to affirm, modify, or reverse the Commissioner's decision with or without a rehearing.  42 U.S.C. § 405(g).  The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error.  <u>Maounis v. Heckler</u>, 738 F.2d 1032, 1034 (9th Cir. 1984) (citing <u>Delgado v. Heckler</u>, 722 F.2d 570, 572 (9th Cir. 1983)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance." <u>Desrosiers v. Sec. of</u>

Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). The District Court

must consider the record as a whole, weighing both the evidence that supports and

detracts from the Commissioner's conclusion. Green v. Heckler, 803 F.2d 528, 530

(9th Cir. 1986) (citing Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985)). While

the Court may not substitute its findings for those of the Commissioner, Palmer v.

Celebrezza, 334 F.2d 306, 308 (3rd Cir. 1964), it may reject the findings not

supported by the record.

**III.  BURDEN OF PROOF**

A claimant is disabled for purposes of the Social Security Act if the claimant

proves by a preponderance of the evidence that: (1) the claimant has a "medically

determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not

less than twelve months," and (2) the impairment or impairments are of such

severity that, considering the claimant's age, education and work experience, the

claimant is not only unable to perform previous work, but also cannot "engage in

any other kind of substantial gainful work which exists in the national economy."

Schneider v. Commr. of Soc. Sec. Admin., 223 F.3d 968, 974 (9th Cir. 2000)

(citing 42 U.S.C. §1382(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a

five-step sequential evaluation process.  Corrao v. Shalala, 20 F.3d 943, 946 (9th Cir. 1994) (citing 42 U.S.C. § 1382C(a)(3)). If the Commissioner finds that a claimant is disabled or not disabled at any step in this process, the review process is terminated.  Id.  At step one, a claimant must show that he or she is not currently engaged in substantial gainful activity.  Id.  At step two the claimant must demonstrate that he has a severe impairment.  Id.  At step three the ALJ must determine whether a claimant's impairment meets or equals the criteria of the Listing of Impairments.  Step four provides that if the claimant does not have a listed impairment, then the claimant must establish a prima facie case of disability by showing an inability to engage in past work because of the medical impairments.  Id. If that case is made, at step five the burden shifts to the Commissioner to prove that the claimant can engage in other types of substantial gainful work existing in the national economy given the claimant's age, education, work experience, and residual functional capacity ("RFC").  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

## IV.  DISCUSSION

### A.  Disability Under Listing 12.02

At step one the ALJ correctly determined that Mr. Moore has not engaged in substantial gainful activity since his application date of September 17, 2005. Tr.

12.  At step two, the ALJ found Mr. Moore has two severe impairments: status post right sided craniotomy with evacuation of subdural hematoma, and seizure disorder.  Tr. 12.  The parties do not dispute these findings.

At step three the ALJ found Mr. Moore does not have an impairment that meets the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 14. The ALJ reviewed the criteria under 20 C.F.R. Part 404, Subpart P, Appendix 1 Listing 12.02 in determining whether Mr. Moore has the psychological and behavioral abnormalities associated with an organic mental disorder.  Tr. 14-15. The ALJ determined Mr. Moore's memory and concentration impairments have not been medically documented and thus fail to meet the requisite "A" criteria under the listing.  Mr. Moore also did not meet the "C" criteria under Listing 12.02 because he had not had "repeated episodes of decompensation, difficulty with even marginal adjustment, nor an inability . . . to function outside a highly supportive living environment."  Tr. 15.

It is unclear why the ALJ considered Mr. Moore's impairments under Listing 12.02 Organic Mental Disorders, rather than 11.00F Traumatic Brain Injury (TBI), and 11.02-11.03 Epilepsy. Listing 11.00 deals with neurological impairments. 11.00F lists the criteria for claimants who have sustained a TBI. 11.00F states that the guidelines for evaluating impairments caused by cerebral

trauma are contained in 11.18. Listing 11.18 states that cerebral trauma is to be evaluated under 11.02, 11.03, 11.04, and 12.02, as applicable.  11.02 and 11.03 define the requirements for convulsive and nonconvulsive epilepsy.

**11.02 Epilepsy—convulsive epilepsy**, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment. With:

A. Daytime episodes (loss of consciousness and convulsive seizures) or

B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

**11.03 Epilepsy—nonconvulsive epilepsy** (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

Although the Plaintiff does argue that the ALJ erred by finding him not disabled under 20 C.F.R. Part 404, Subpart P, Appendix 1, he does not specifically dispute the ALJ's consideration of his impairments under Listing 12.02 instead of

11.02 or 11.03.  Courts generally do not address issues not raised by the parties on appeal.  Fed. R. App. P. 28(a); *Harden v. Roadway Package Systems, Inc.*, 249 F.3d 1137, 1141 (9th Cir. 2001); *Crawford v. Gould*, 56 F.3d 1162, 1169 (9th Cir. 1995).  However, courts may raise issues sua sponte to prevent injustice, *Morales v. Astrue*, 2010 WL 2629571, 8 (C.D. Cal 2010), or to raise an affirmative defense not raised by the defendant, *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 216 F.3d 764, 788 (9th Cir. 2000).  The ALJ's consideration of Mr. Moore's impairments under 12.02 rather than 11.02-11.03 falls under the Plaintiff's general argument that the ALJ erred in finding Mr. Moore not disabled.  It is raised so it may be addressed upon remand.

Mr. Moore's impairments arise from a traumatic brain injury.  Tr. 230.  The ALJ found that Mr. Moore had a severe seizure disorder.  Tr. 12.  Mr. Moore testified in his hearing that he has three to four seizures per month even though he regularly takes his anti-seizure medication.  Tr. 36-38.  There are no medical records to refute Mr. Moore's testimony.  There are several medical records that show Mr. Moore does have seizures.  Tr. 223-225, 230, 273.  Mr. Moore testified that he does not go to the doctor every time he seizes because his doctor told him it was unnecessary and he cannot afford it.  Tr. 37.  There is no evidence refuting this statement or Mr. Moore's testimony that he has three to four seizures per month.

Thus, it appears the ALJ erred in considering Mr. Moore's impairments under the Organic Mental Disorder Listing (12.02) instead of Epilepsy (11.02 or 11.03).

The ALJ does not state whether he began at the TBI Listing 11.00F in determining 12.02 was the proper Listing for Mr. Moore.  It is important to begin with 11.00F because it provides specific instructions for determining disability for claimants with TBIs.  For instance, "[t]he rate and extent of recovery can be highly variable and the long-term outcome may be difficult to predict in the first few months post-injury. . . . The actual severity of a mental impairment may not become apparent until 6 months post-injury."  20 C.F.R. Part 404, Subpart P, Appendix 1, 11.00F.

In his decision, the ALJ first states that Mr. Moore's impairments do not meet any of the listed impairments.  Tr. 14.  The ALJ then states he considered Mr. Moore's impairments under Listing 12.02, and his impairments did not meet the level of severity required.  Tr. 14.  Because the ALJ only specifically discussed Listing 12.02 in his decision, it appears he only considered Mr. Moore's impairments under that Listing. Tr. 14-15. As Mr. Moore's impairments appear to fit under the Epilepsy Listings more closely than the Organic Mental Disorder Listing, the ALJ erred by considering Mr. Moore's impairments only under 12.02.

If the ALJ did consider Mr. Moore's impairments under the Epilepsy Listing and found them insufficient, he erred by not including this analysis in his decision.

Upon remand, it is recommended the ALJ first consider whether Mr. Moore is disabled under Listing 11.00F and 11.02 or 11.03. If Mr. Moore is not disabled under those Listings, the ALJ should request Mr. Moore undergo neuropsychological testing at the Commissioner's expense. The ALJ should then reconsider whether Mr. Moore is disabled under Listing 12.02 with the assistance of the neuropsychological testing results, as described in detail below.

## B. Neuropsychological Testing

Mr. Moore argues the ALJ erred in finding he does not have an organic mental disorder. C.D. 18, p. 5-6. Mr. Moore argues that there is no medical documentation of his memory and concentration difficulties because he cannot afford the neuropsychological testing recommended by his neurologist, Dr. Cruz. Tr. 5-6. He argues the ALJ should have asked for a neuropsychological examination prior to his evaluation of Plaintiff's disability. Tr. 6. Plaintiff believes remand to further develop the medical record is in order. Tr. 11.

The Commissioner argues that Plaintiff received reduced cost medical treatment and medication and "did not even seek that treatment consistently." C.D. 25, p. 7. The Commissioner argues the ALJ properly considered Plaintiff's failure

to see Dr. Norum for five months, even though he said he was having 3-4 seizures per month, in determining Plaintiff's credibility.  Id.

The Commissioner does not dispute Plaintiff's claim that he could not afford the recommended neuropsychological testing.  C.D. 25, p. 7.  Rather, the Commissioner evidently argues that because Mr. Moore received some general treatment at reduced cost from Dr. Norum, but never sought neuropsychological testing, his failure to do so was unjustified. Id.

A claimant's inability to afford medical treatment cannot be used as a basis for finding his testimony not credible.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  "Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir.1995).

20 C.F.R. Subpart P, Appendix 1, 12.00(B) describes the medical evidence necessary for the Commissioner to determine if a claimant has a mental disorder:

We must establish the existence of a medically determinable impairment of the required duration by medical evidence consisting of symptoms, signs, and laboratory findings (including psychological test findings). Symptoms are your own description of your physical or mental impairment. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, as described by an appropriate medical source. . . . The symptoms and signs may be intermittent or continuous depending on the nature of the disorder.

20 C.F.R. Subpart P, Appendix 1, 12.00(B) (emphasis added).

The ALJ determined that Mr. Moore did not have an organic mental disorder because there was no medical evidence documenting the memory and cognitive difficulties alleged.  Tr. 15.  Dr. Cruz, Mr. Moore's examining neurologist, stated in Mr. Moore's consultation record that "[i]t is probable that he has cognitive deficits that are not being picked up by the bedside neurologic testing, which, if it becomes a concern, should be further evaluated with detailed neuropsychological testing with Dr. James English."  Tr. 232.  Dr. Cruz apparently believed that Dr. English, a neuropsychologist, was the "appropriate medical source" to diagnose and treat Mr. Moore's cognitive deficits.  Although the ALJ correctly determined that the medical record did not support Mr. Moore's allegations of memory and cognitive difficulties, he did not have a full and appropriate medical record from which to make his determination.  Without the neuropsychological testing results, the ALJ did not have evidence of either the existence or lack of psychiatric signs required by 20 C.F.R. Subpart P, Appendix 1, 12.00(B).

The Commissioner can ask a claimant to undergo further examinations if the record does not contain sufficient evidence to determine disability.  20 C.F.R. § 1527(c)(3) (We will request additional existing records, recontact your treating sources or any other examining sources, ask you to undergo a consultative

examination at our expense, or ask you or others for more information.)

Here, neuropsychological testing results are necessary to determine if Mr.
Moore is disabled under Listing 12.02.  The current record is not sufficient to make
such a determination, as evidenced by Dr. Cruz's recommendation.  Tr. 232. The
Plaintiff stated at his hearing and on appeal that he could not afford this testing.
Tr. 37, 39; C.D. 18, p. 5.  Neither the Commissioner nor the ALJ disputed his
ability to pay for it.  C.D. 25, p.7.  The ALJ erred by making his determination
without neuropsychological testing results.  Upon remand, the ALJ should request
Mr. Moore undergo neuropsychological testing and use the results of this testing in
determining if Mr. Moore is disabled under Listing 12.02.


For the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary
Judgment be GRANTED and this matter be REMANDED for further
administrative proceedings as set out above.

**IT IS FURTHER RECOMMENDED** that the Commissioner's Motion for
Summary Judgment be DENIED.

NOTICE OF RIGHT TO OBJECT TO FINDINGS &
RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Findings and Recommendations within fourteen (14) business days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge.

DATED this 30th day of March, 2011.

*/s/Keith Strong*
Keith Strong
United States Magistrate Judge